Argued and submitted August 21, 1981, reversed and
remanded for further consideration January 25, 1982,
petition for attorney fees denied July 6, 1983
(63 Or App 743, 666 P2d 288)

# BRADY,
*Petitioner,*

*v.*

# BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

## (No. 2-79, CA A20220)

639 P2d 673

Alan Viewig, Portland, argued the cause and filed the
brief for petitioner.

William F. Gary, Solicitor General, Salem, argued the
cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, and Barbara A. Jacobson, Certified Law Student, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, a dentist, seeks review of an order of the Commissioner of the Bureau of Labor (Commissioner) finding that he was guilty of an unlawful employment practice in that he had refused on the basis of sex to hire a qualified job applicant for a position as dental assistant. ORS 659.030(1)(a).[1] He contends that there was no substantial evidence in the record to support the Commissioner's order. We reverse and remand.

This case began March 14, 1979, when the Commissioner filed charges of sex discrimination in hiring against petitioner. The charges alleged that he had refused to hire Charlotte Lehde on the basis of her sex under the following set of facts:

"(1)  On or before July 10, 1976, Charlotte I. Lehde, a female, applied for employment with Brady, the Respondent, as a dental technician. Her application was denied.

"(2)  Charlotte I. Lehde at the time of her application had successfully completed a two year training program for dental technicians.

"(3)  Subsequent to Charlotte I. Lehde's rejection, Brady hired or attempted to hire males to work as laboratory dental technicians who were less qualified than Ms. Lehde.

"(4)  After July 10, 1976 and until January 1, 1977, Charlotte I. Lehde repeatedly applied for employment as a laboratory dental technician without becoming employed by Brady."

---

[1] ORS 659.030(1)(a):

"(1) For the purposes of ORS 659.010 and 659.400 to 659.435, it is an unlawful employment practice:

"(a) For an employer because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older and under 65 years of age, or because of the race, religion, color, sex, national origin, marital status or age of any other person with whom the individual associates, or because of a juvenile record, that has been expunged pursuant to ORS 419.805 to 419.835, of any individual, to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business."

A hearing was held in April, 1979, after which the Commissioner, on December 7, 1979, entered proposed findings of fact, conclusions of law and order concluding that petitioner had unlawfully discriminated against Lehde and should pay $3,707[2] damages for back pay. The Commissioner entered the final order, which reached the same conclusion, on December 23, 1980. The order recited the following "findings of fact" and "ultimate findings of fact:"

## "FINDINGS OF FACT

"1) Respondent, a Doctor of Dental Medicine, is engaged in the practice of dentistry and operates a dental laboratory in the state of Oregon. Respondent utilizes the services of one or more employees in this business.

"2) Complainant is a female person.

"3) On June 11, 1976, Complainant received the degree of Associate of Applied Science in Dental Technology from Portland Community College. Her two years of study leading to that degree had included, but were not limited to, laboratory training and study of procedures relating to dentures. In June, 1976, Complainant passed the Recognized Graduate Examination of the National Board for Certification of Dental Technicians.

"4) Starting the latter part of June, 1976, Complainant applied for employment as a dental technician at various dental laboratories in the Portland area. On July 10, 1976, she appeared at the Respondent's Portland dental office in search of employment as a dental technician in Respondent's dental laboratory. She was accompanied by Jan Withnell, a female friend. She completed and returned an application form. She talked with Fred Schmeer who, as foreman of Respondent's dental laboratory, was responsible for hiring employees for the laboratory. Complainant also visited Wendell DeLorme, a male friend who was employed in Respondent's dental laboratory. She never received a response to her application for employment.

"5) The duties of the dental technicians working in Respondent's dental laboratory were to construct full and partial dentures. Complainant was qualified to perform these duties.

"6) In the latter part of July, 1976, Complainant made a second visit to Respondent's Portland dental office.

---

[2] The amount represents the wage Lehde would have earned between the time the Commissioner determined she should have been offered a job and the time she discontinued seeking a job with Brady. *See* Findings of Fact 13 and 14, *infra.*

The purpose of this visit was to inquire about the status of her July 10 application for employment. Because her July 10 application could not be located, Complainant completed and returned a second application. She never received a response to this application for employment.

"7) In June, 1976, Allen Alcock, a male person, applied for employment as a dental technician in Respondent's dental laboratory. Mr. Alcock had completed eight months of training in a dental technician school and had no other experience in dental technology. He was less qualified to perform the duties of a dental technician than Complainant.

"8) Mr. Alcock was hired to work as a dental technician at the Respondent's dental laboratory on a trial basis. He worked from the week of July 8, 1976 through the week of August 6, 1976. His salary was $168.50 per week. He was then laid off due to lack of work.

"9) Soon thereafter, during the late summer or early fall of 1976, Mr. Schmeer telephoned Mr. Alcock and asked him to return to work at the Respondent's dental laboratory. Mr. Alcock was still less qualified to perform the duties of a dental technician than Complainant. Mr. Alcock declined because he had obtained other employment.

"10) At the time he asked Mr. Alcock to return to work, Mr. Schmeer was fully aware that Complainant was better qualified than Mr. Alcock and that Complainant desired to be employed as a dental technician in Respondent's dental laboratory. Yet the Complainant was not contacted concerning this or any other vacancy for a dental technician at Respondent's Portland dental laboratory.

"11) Although he had never seen Complainant's application for employment, Respondent was personally aware, during the summer and fall of 1976, that she desired employment as a dental technician in his dental laboratory.

"12) After she made her second application for employment at Respondent's dental laboratory, Complainant continued to look for employment as a dental technician at other dental laboratories without success. She also went to Respondent's Portland dental office at least twice every month to seek employment and to visit Mr. DeLorme.

"13) On or about December 10, 1976, during one of her visits to Respondent's office, Complainant confronted Respondent directly and requested consideration for employment. She was told, in response, to return at 9:00

the following morning for what would apparently be a test or tryout.

"14) Upon reflection, Complainant decided not to return to Respondent's office as directed because she believed that the test or tryout would be designed to prevent her successful completion of it and that it would thereby be merely a pretext for disposing of her application. Instead, she filed her complaint with the Civil Rights Division of the Bureau of Labor and Industries.

"15) During 1976, nineteen persons worked as dental technicians in the dental laboratory of Respondent's Portland dental office at one time or another. All of these persons were male. Respondent employed an average of five dental technicians in his Portland dental laboratory at any one time. Therefore, during 1976, approximately fourteen persons, all male, were hired as dental technicians in Respondent's Portland dental laboratory.

## "ULTIMATE FINDINGS OF FACT

"1) From about July 10, 1976 to December 10, 1976, Complainant, a female person, applied and was qualified, to work as a dental technician in the dental laboratory of Respondent's Portland dental office. When there was an opening for a dental technician in Respondent's dental laboratory during the late summer or early fall of 1976, Respondent's foreman Schmeer offered this work to a male person who was less qualified than Complainant, even though Mr. Schmeer knew that Complainant was better qualified, had applied and still desired to work as a dental technician in Respondent's dental laboratory. Respondent has not offered substantial evidence that Mr. Schmeer had a legitimate non-discriminatory reason for failing to employ Complainant.

"During 1976, Respondent, through foreman Schmeer, hired approximately fourteen persons, and employed nineteen persons, as dental technicians in his dental laboratory, all of whom were male.

"Respondent's maintenance of a sex-segregated dental technician work force in his dental laboratory, his offering a less qualified male person dental technician employment which Complainant sought and was qualified to perform, and his failure to prove the existence of legitimate non-discriminatory reason for not hiring Complainant, compel the conclusion that Respondent failed to employ Complainant due to her sex.

"* * * * *"

Petitioner purportedly attacks these findings and ultimate findings as not supported by substantial evidence. However, the content of the attack reflects a misunderstanding of both the substantial evidence test and this court's role in applying it. With the exception discussed below, the attack on the Commissioner's findings asks us to reassess or reweigh facts about which there is an evidentiary dispute. That is not our role. *See, e.g., Lewis and Clark College v. Bureau of Labor,* 43 Or App 245, 602 P2d 1161, *rev den* 288 Or 667 (1979); *Spray v. Bd. of Medical Examiners,* 50 Or App 311, 624 P2d 125, *modified* 51 Or App 773, 627 P2d 25, *rev den* 291 Or 117 (1981).

The one point requiring close scrutiny is petitioner's challenge to the Commissioner's finding that the attempted re-hiring of Alcock establishes unlawful discrimination. Alcock, less qualified than Lehde, had first been hired before Lehde applied for a job; he was later laid off for lack of work. Still later, with Lehde's job application pending, Alcock was offered a job again. He declined. We agree with petitioner that the fact of the offer of reemployment to Alcock, in light of the other facts the Commissioner found, does not necessarily establish unlawful discrimination.

The Commissioner found that Alcock was laid off due to lack of work. There is no suggestion that he was not competent in the work. If Alcock was offered a job because of prior, satisfactory performance, the attempt to re-employ him after a lay-off had a legitimate, non-discriminatory purpose, *see Lewis and Clark College v. Bureau of Labor, supra,* and that act alone cannot constitute unlawful discrimination. On the other hand, if the offer to Alcock was not based upon his prior demonstration of competence but was instead based upon an intent on petitioner's part to avoid hiring Lehde, petitioner is guilty of unlawful discrimination.

The job offer to Alcock played a pivotal role in the Commissioner's decision, but neither her findings nor her reasoning identify or explain precisely what she found concerning the offer to Alcock. If she was of the opinion that the *fact of the offer* established discrimination, she was in error, given the other facts found in this case. If, on

the other hand, she also found either (1) that Alcock was not qualified to do the work, or (2) he was qualified, but that is not why he was offered the job, she has not articulated those findings. Without them, the order entered here is insufficient.

Reversed and remanded for further consideration in light of this opinion.[3]

---

[3] We remand, rather than reverse outright, because it may be that the Commissioner, upon reconsideration, will still find unlawful discrimination under the facts of this case. If she does, it would be useful for her to explain her *reasoning* in the new opinion. Although petitioner does not attack it on that ground, the present opinion is singularly lacking in such a reasoned explanation.